**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **BRIAN ROTH,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )  **Case No. CIV-16-0002-D** |
| | ) |
| **CAROLYN W. COLVIN, Acting** | ) |
| **Commissioner of the Social Security** | ) |
| **Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of
the final decision of the Commissioner of the Social Security Administration denying
Plaintiff's applications for supplemental security income (SSI) and disability insurance
benefits (DIB) under the Social Security Act. United States District Judge Timothy
DeGiusti has referred this matter to the undersigned magistrate judge for initial
proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). The Commissioner has
answered and filed a transcript of the administrative record (hereinafter TR. ____).
The parties have briefed their positions, and the matter is now at issue. It is
recommended that the Commissioner's decision be **AFFIRMED**.

## I.    PROCEDURAL BACKGROUND

Plaintiff's applications for SSI and DIB were denied initially and on
reconsideration. Following two administrative hearings, an Administrative Law Judge
(ALJ) issued an unfavorable decision. (TR. 17-28). The Appeals Council denied

Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 1, 2011, the alleged disability onset date. (TR. 19). At step two, the ALJ determined that Plaintiff had severe impairments involving: major depression, severe; generalized anxiety disorder; cognitive disorder from alcohol abuse; learning disorder; personality disorder, not otherwise specified; and alcohol dependence, in early remission. (TR. 20). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 20).

At step four, the ALJ found that Plaintiff could not perform his past relevant work. (TR. 26). The ALJ further found Plaintiff had the residual functional capacity (RFC) to:

> [W]ork at all exertional levels, with the following non-exertional functional restrictions and limitations: understand, remember, and carryout simple, repetitive, routine instructions; make only simple work related decisions; requires a job that is structured, closely supervised, and allows for little, if any, independent judgment; deal with only occasional change in work processes and environment; have only incidental, superficial work-related type contact with the general public, co-workers and supervisors, i.e., brief succinct, cursory, concise

communication relevant to the tasks being performed; cannot perform any fast pace work; and may have up to a 10% reduction in production from that of the average employee.

(TR. 22).

Based on the finding that Plaintiff could not perform his past relevant work, the ALJ proceeded to step five. There, he presented the limitations from the RFC in a question to a vocational expert (VE) to determine if there were other jobs Plaintiff could perform. (TR. 56-58). Given the limitations, the VE testified that Plaintiff could perform three jobs as set forth in the Dictionary of Occupational Titles (DOT). (TR. 57-58). The ALJ adopted the testimony of the VE and concluded that Mr. Roth was not disabled based on his ability to work. (TR. 27).

## III.   ISSUES PRESENTED

On appeal, Plaintiff alleges: (1) error in the evaluation of Global Functioning Assessment (GAF) scores, (2) error in according "great weight" to various opinions, (3) error in the evaluation of a treating physician's opinion, (4) error in the evaluation of a consultative psychologist's opinion, (5) multiple errors in the RFC, and (6) error in the credibility analysis.

## IV.   STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140

(10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V.    NO ERROR IN THE EVALUATION OF GAF SCORES

Mr. Roth first alleges error in the evaluation of GAF scores which had been authored by consultative psychologist, Dr. Ray Hand. (ECF No. 16:6-13).[1] On March 5, 2012, Dr. Hand performed a consultative mental health examination of Plaintiff and summarized his findings in a report. (TR. 250-253). In part, Dr. Hand opined that Plaintiff's GAF "is at 50, in the serious symptoms range." (TR. 253).

The GAF is a 100–point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning." *Keyes–Zachary v. Astrue,* 695 F.3d 1156, 1162 n. 1 (10th Cir. 2012) "A GAF score of 41–50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as inability to keep a

---

[1]    Mr. Roth also states that "[t]he Court should find that the ALJ's failure to discuss the repeated GAF scores by Dr. Rouse . . .  and the weight accorded to such scores amounts to reversible error." (ECF No. 16:19). But beyond this statement, Plaintiff presents no substantive argument regarding the GAF scores given by Dr. Gary Rouse. As a result, the Court should consider any argument related to Dr. Rouse's GAF scores waived. *See Keyes–Zachary v. Astrue,* 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those contentions that have been adequately briefed for review.")

job." *Langley v. Barnhart*, 373 F.3d 1116, 1122, n.3 (10th Cir. 2004). The ALJ gave a detailed summary of Dr. Hand's findings, although admittedly, he failed to specifically mention the GAF score in the written decision. *See* TR. 23-24. Mr. Roth maintains that this omission constitutes "significant" error because "Dr. Hand's findings were in opposition to the ALJ's findings . . . that Mr. Roth can work." (ECF No. 16:7). The Court should conclude otherwise.

Mr. Roth has failed to show that the ALJ ignored the GAF score. The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater,* 79 F.3d 1007, 1009–1010 (10th Cir. 1996). The ALJ discussed Dr. Hand's examination findings in the decision and therefore clearly considered them. (TR. 23-24). He also gave great weight to the opinions from State Agency examiners who reviewed Mr. Roth's medical records, including Dr. Hand's report. (TR. 25; 261-278). Indeed, Plaintiff admits that Dr. Hand's findings "formed the foundation of the agency reports." (ECF No. 16:11). Moreover, the ALJ stated that he considered the entire record, and the Court must take the ALJ at his word. (TR. 19). *See Wall v. Astrue*, 561 F.3d 1948, 1970 (10th Cir. 2009).

Mr. Roth, however, argues that the ALJ was required to discuss the GAF scores in the written decision because "he may not ignore evidence that does not support his decision, especially when that evidence is significantly probative." (ECF

No. 16:8) (internal citation and quotation marks omitted). But for two reasons, the Court should conclude that Dr. Hand's GAF score was not "significantly probative."

First, a low GAF score, standing alone, is insufficient to prove disability because "the Social Security Administration does not consider GAF scores to have a direct correlation to the severity requirements in [the] mental disorders listings, and the [ ] *Diagnostic and Statistical Manual of Mental Disorders* has discontinued its use because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." *Rose v. Colvin*, 634 F. App'x. 632, 636 (10th Cir. 2015) (internal quotation marks and citations omitted).

Second, Dr. Hand never explained how he calculated the GAF score, nor did he link the score to any particular symptoms or state whether it impacted Mr. Hand's ability to work. (TR. 250-253). Although Plaintiff maintains that the score was "in opposition to the ALJ's findings . . . that Mr. Roth can work," Mr. Roth's theory is not entirely self-evident. (ECF 16:7). *See Lee v. Barnhart,* 117 F. App'x. 674, 678 (10th Cir. 2004) (noting that an unexplained GAF score might indicate an impairment "solely within the social, rather than the occupational, sphere"); *see also See Butler v. Astrue,* 412 F. App'x. 144, 147 (10th Cir. 2011) (noting that GAF scores that are not linked to any work-related limitations are not particularly helpful and cannot alone determine disability); *Eden v. Barnhart,* 109 F. App'x. 311, 314 (10th Cir. 2004) (noting that because a GAF of 50 "may not relate to [Plaintiff's] ability to work, the

score, standing alone, without further explanation, does not establish an impairment severely interfering with an ability to perform basic work activities.").

Because the GAF score was not significantly probative and the ALJ stated that he considered all of the evidence in the record, the Court should conclude that Plaintiff has failed to demonstrate error in the ALJ's failure to specifically discuss the GAF score in the decision.

## VI.    NO ERROR IN THE ALJ'S ACCORDING "GREAT WEIGHT" TO VARIOUS OPINIONS

In the decision, the ALJ accorded "great weight" to:

[F]indings and assessment of the November 2011 consultative psychological evaluation and the findings and assessments of the State agency examiners and consultants who considered this issue at the initial and reconsideration levels of administrative review. (Exhibits 3F, 4F, 5F, and 6F).

(TR. 25). Mr. Roth alleges various errors regarding the ALJ's decision to accord these opinions "great weight." (ECF No. 16:8-13). The Court should conclude that none of Plaintiff's allegations have merit.

First, Mr. Roth alleges "there is no report dated November, 2011; so that finding is certainly not supported by substantial evidence." (ECF No. 16:8). The undersigned agrees with Plaintiff's general statement, but in the paragraph preceding the ALJ's reference to the "November 2011" evaluation, he discusses findings from consultative examining psychologist Dr. R. Keith Green from November 2013. (TR. 25). Clearly, the reference which followed, referring to November 2011, instead of November 2013, was nothing more than a scrivener's error for which the ALJ should

not be penalized. *See Poppa v. Astrue*, 569 F.3d 1167, 1172, n.5 (10th Cir. 2009) (noting that the ALJ's reference to an incorrect date was a mere scrivener's error and did not affect the outcome of the case when the ALJ had noted the correct date earlier in his decision).

Second, Plaintiff states:

> 5F and 6F are not medical opinions, but are one page "reports" citing the vitals of Mr. Roth, and both say that Mr. Roth reported no physical limitations in his function reports. Those are not medical "opinions." These portions of the report do not express any opinions concerning his symptoms, diagnosis and prognosis, what [she] can still do despite the impairment(s), [or her] physical and mental restrictions.

(ECF No. 16:9). Beyond this statement, Plaintiff presents no substantive argument. As a result, the Court should conclude that Mr. Roth has waived any argument related to the reports from State Agency physicians at Exhibit 5F and 6F. *See Keyes–Zachary v. Astrue,* 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those contentions that have been adequately briefed for review."); *Franklin Sav. Corp. v. U.S.,* 180 F.3d 1124, 1128 n. 6 (10th Cir. 1999) (arguments presented superficially are waived); *Murphy v. Astrue*, 2011 WL 2144610, at * 6 (W.D. Okla. May 14, 2011) (rejecting allegation of error for "failure to develop the factual—and legal—bases for [the] argument.").

Third, Mr. Roth challenges the ALJ's reliance on Exhibit 4F, an opinion from Dr. Phillip Massad, stating it "is basically a check box form rather than an evaluation" and such evaluations should be rejected when "unsupported by the longitudinal

evidence." (ECF No. 16:12). For two reasons, the Court should not find Mr. Roth's argument persuasive.

First, Dr. Massad's report is more than just a "check box" form--it includes a narrative summary explaining the physician's basis for his findings, which reveals that the conclusions were based on a review of Plaintiff's medical record. *See* TR. 277.

Second, Dr. Massad's report is consistent with other evidence in the record. In his findings, Dr. Massad concluded:

> The clmt has sufficient concentration and memory to do simple, repetitive tasks but no complex tasks as evidenced by the clmt's functioning, as described in the MER, and ability to undertake a variety of everyday life demands. The clmt would be limited in the ability to work with the general public. The clmt could adapt to changes in a familiar environment. There is not sufficient evidence to suggest that the clmt's reports are not credible or that the information across records is inconsistent.

(TR. 277). Dr. Massad's findings are consistent with the evidence of record, namely findings from consultative examiner Dr. Green. *See* TR. 298 (Dr. Green's findings that Plaintiff's "ability to retain and carry out simple and detailed instructions was intact, though that for complex ones was impaired" and "activities of daily living were constricted, but nevertheless, positive for being carried out independently.") In addition to being consistent with Dr. Green's opinion, as Plaintiff himself points out, findings from Dr. Massad "parrot[] the findings of Dr. Hand." (ECF No. 16:10). *Compare* TR. at 250-253 (Dr. Hand) *to* TR. 273 (Dr. Massad). Although Plaintiff argues against adopting Dr. Massad's report, he also states that "reliance on [ ]

opinions [like that of Dr. Massad] is appropriate when they are supported by other substantial evidence" and "the form takes on greater significance when it is supported by medical records." (ECF No. 16:13). Because Dr. Massad's findings *were* accompanied by an explanatory narrative which *was supported* by the record, the Court should reject Plaintiff's challenge to the ALJ's reliance on Dr. Massad's report.

Finally, Plaintiff argues that the ALJ erroneously accorded "great weight" to Dr. Massad's opinions while "fail[ing] to assign weight to Dr. Hand's [opinion]." (ECF No. 16:9-12). According to Mr. Roth, because Dr. Hand's opinion "formed the foundation" of Dr. Massad's opinion, to which the ALJ accorded "great weight," the ALJ erred in failing to adopt Dr. Hand's findings "which reflected an inability to work." (ECF No. 16:9-12). Plaintiff's theory is premised on flawed reasoning and the Court should find no error.

Although Plaintiff believes that Dr. Hand's findings reflected an inability to work, the physician himself never reached this conclusion. Dr. Hand noted Mr. Roth's complaints, diagnosed a "normal range" of cognitive functioning, an "average" range of general intellectual functioning, made a "likely" diagnosis of depression, and stated that Plaintiff's "prognosis for improvement [was] guarded." (TR. 250-253). But nowhere did Dr. Hand identify any limitations on Mr. Roth's ability to work, or state that he was unable to work. *See* TR. 250-253. Thus, Plaintiff's allegation that "Dr. Hand's findings [ ] reflected an inability to work" was not based on Dr. Hand's actual opinion, but rather on Plaintiff's own assumptions regarding the import of the

physician's findings. Dr. Hand did not conclude that Mr. Roth was unable to work and the Court cannot reweigh the evidence to make such finding. *See Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (stating that the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency.") (internal quotation marks omitted).

Additionally, the Court should reject any notion that the ALJ improperly failed to weigh Dr. Hand's opinion. Plaintiff argues:

> The ALJ, in adopting [Dr. Massad's] opinions, also never said why they were entitled to more weight than any of the doctors who actually saw Mr. Roth. That is backwards. When a treating [or examining] physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine *the other physicians' reports* to see if they outweigh the treating physician's report, not the other way around.

(ECF No. 16:12). (internal citations and brackets and quotation marks omitted). Apparently Mr. Roth believes that the ALJ erred in giving "great weight" to the opinion of Dr. Massad, a non-examining physician, without weighing the opinion of Dr. Hand, who actually examined Mr. Roth. Although the ALJ did not expressly weigh Dr. Hand's opinion, the ALJ summarized the opinion and it was consistent with Dr. Massad's opinion which the ALJ did weigh. *See* TR. 25, 250-253, 273, 277. As a result, the need for express analysis was weakened and the Court should reject Plaintiff's allegation otherwise. *See Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) ("in this case none of the record medical evidence conflicts with the ALJ's conclusion that claimant can perform light work, . . . [thus] the need for express analysis is weakened.").

## VII. NO ERROR IN THE EVALUATION OF TREATING PHYSICIAN'S OPINION

Mr. Roth next challenges the ALJ's treatment of opinions offered by treating physician, Dr. Rouse. (ECF No. 16:13-20). Specifically, Plaintiff alleges: (1) the ALJ failed to follow correct legal standards in denying Dr. Rouse controlling weight and (2) the ALJ's reasons for discounting Dr. Rouse's opinions lack substantial evidence. The Court should find neither argument persuasive.

An ALJ must follow a two-pronged analysis in evaluating of a treating physician's opinion. First, the ALJ must determine whether a treating physician's opinion is entitled to "controlling weight." *Krausner v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). This deference must be given if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with the other substantial evidence in the case record." *Id.*; SSR-96-2p 1996 WL 374188 (July 2, 1996). If the opinion is deficient in either of these respects, it is not to be given controlling weight. *Krausner v. Astrue,* 638 F.3d at 1330.

If the ALJ declines to give the treating physician's opinion "controlling weight," the ALJ must examine particular factors and explain the amount of weight assigned.[2]

---

[2] These factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Krausner v. Astrue*, 638 F.3d at 1330, 20 C.F.R §§ 404.1527, 416.927.

Although the ALJ need not explicitly discuss each factor, the reasons stated must be "sufficiently specific" to permit meaningful appellate review. *See Krausner*, 638 F.3d at 1331. If the ALJ rejects the opinion completely, he must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

Here, the ALJ acknowledged Dr. Rouse's opinions, but declined to give them controlling weight, stating:

> Finally, the undersigned considered, but afforded only some weight to, the opinion of Dr. Rouse as set forth in Exhibit 9F. While the evidence of record establishes that the claimant has "severe["] mental functional limitations, the evidence of record does not support a finding of "marked" degrees of limitation in persistence, pace, memory, concentration, grooming, nor that the claimant cannot perform even "simple" tasks. Such opinion is also inconsistent with the claimant's reported activities and abilities, including his ongoing self-employment of "skilled" work activity. Such opinion is also inconsistent with test results of Dr. Green appearing at Exhibit 11F. As per Dr. Rouse's own treatment notes, the claimant had not stopped drinking until sometime in February 2013 and, when he did so, his mental status examination results improved as per Dr. Green's examination and Dr. Rouse's own subsequent treatment notes.

(TR. 25-26). Once the ALJ had declined controlling weight to Dr. Rouse's opinions, he had to examine the opinion utilizing various factors and explain the amount of weight assigned. The ALJ complied, noting: (1) inconsistencies between Dr. Rouse's opinion and Dr. Green's opinion, (2) Mr. Roth's reported activities and abilities, and (3) improvement as noted by Dr. Rouse's own records. (TR. 25-26). Ultimately, the ALJ afforded Dr. Rouse's opinion "some weight" which is all he was required to do. (TR.

25). The Court should conclude that the ALJ's reasoning was "sufficiently specific" to permit meaningful appellate review.

Plaintiff disagrees, however, challenging each of the reasons offered by the ALJ. The Court should reject Mr. Roth's challenges as meritless.

First, the ALJ rejected Dr. Rouse's opinion that Plaintiff suffered from "marked" degrees of limitation in persistence, pace, memory, concentration, grooming and that Plaintiff could not perform even "simple" tasks, stating that "such opinion [was] inconsistent with the claimant's reported activities and abilities." (TR. 26). Mr. Roth challenges the ALJ's rationale, citing statements from Mr. Roth's functional reports, which Plaintiff contends "do not indicate an ability to work." (ECF No. 16:14). But Plaintiff is not charged with the task of weighing the evidence and deciding whether it supports a finding of disability. That task is left to the ALJ in the first instance and this Court will not reweigh the evidence to reach a contrary conclusion. *See Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015).

Next, the ALJ cites Mr. Roth's "ongoing self-employment of 'skilled' work activity" as inconsistent with various "marked" mental limitations found to have existed by Dr. Rouse. (TR. 26). Mr. Roth challenges the ALJ's rationale, stating Mr. Roth's part-time work "is so small is cannot be [substantial gainful activity]" and "[s]killed work . . . would tend to indicate much higher earnings." (ECF No. 16:14). But the issue is not whether the work was considered substantial gainful activity, or how much money Plaintiff earned. Instead, the ALJ relied on Plaintiff's ability to perform the work as

inconsistent with Dr. Rouse's findings that Mr. Roth suffered from "marked" mental limitations.

Third, Mr. Roth challenges the ALJ's statement that Dr. Rouse's opinion was inconsistent with the findings from Dr. Green. According to Plaintiff, Dr. Green found "moderate" impairments in the areas of Mr. Roth's abilities to: (1) interact appropriately with the public, supervisors, and co-workers, and (2) respond appropriately to usual work situations and to changes in a routine work setting. (ECF No. 16:14-15, citing TR. at 293-294). Plaintiff is correct and such findings *are* inconsistent with Dr. Rouse's findings, as noted by the ALJ. (TR. 26). Mr. Roth acknowledges this fact, but then states Dr. Green "also found that [Plaintiff's] psychological problems would create up to moderate limitations while performing work" and argues that "it is posited that these moderate limitations, when considered altogether, would also eliminate work." (ECF No. 16:15). Once again, it appears as though Mr. Roth is asking the Court to reweigh the evidence, but as explained, the request should be denied. *See supra*.

Finally, Mr. Roth again argues that "the ALJ did not properly apply the treating physician rules." (ECF No. 16:15). Plaintiff then recites a number of findings from Dr. Rouse and argues that Dr. Rouse's opinions are consistent with "the overall record," and in particular findings from Dr. Green and Dr. Hand. In sum, Plaintiff argues "[t]he ALJ is just wrong." (ECF No. 16:16). Again, it appears that Mr. Roth is attempting to reweigh the evidence in his favor, which this Court cannot do. The ALJ properly declined controlling weight to Dr. Rouse's opinions, gave sufficient reasons for rejecting

portions of Dr. Rouse's opinion and ultimately accorded the opinion "some weight." The ALJ's rationales were sufficient and the Court should reject Plaintiff's contrary arguments.[3]

## VIII. NO ERROR IN CONSIDERATION OF CONSULTATIVE PSYCHOLOGIST'S OPINION

Mr. Roth challenges the ALJ's evaluation of the opinion from consultative psychologist, Dr. Green. According to Plaintiff, the ALJ turned a "blind eye" to findings that Plaintiff:

- Haltingly performed serial 7s,

- Maintained sporadic eye contact,

- Had been losing weight unintentionally,

- Was experiencing suicidal ideations,

- Had audio [sic] and visual hallucinations,

- Had narrowed thought processes,

- Was unable to recall words after a 20-minute delay,

- Had an impaired capacity for new learning, which supported his complaints of memory problems,

- Could only carry out two of three instructions given,

_____

[3] Mr. Roth also states that "the ALJ must consider all the MER and cannot 'pick and choose' only the evidence that supports his position." (ECF No. 16:18). Plaintiff then cites a string of cases supporting this general proposition and concludes: "[b]ecause the ALJ failed to discuss probative evidence, the Court cannot determine whether he actually considered it." (ECF No. 16:18). But other than this general assertion, Plaintiff does not develop this argument outside of his other allegations of error which the undersigned has discussed. Accordingly, the Court should not consider this to be a separate proposition of error.

- Had a performance score lower than his verbal score on the WAIS-III which indicated overall impairment of psychomotor skills and learning disabilities,

- Had impaired attention and pace, and

- Had a psychological capacity for work was mild to moderate.

(ECF No. 16:20-21). Plaintiff is incorrect, as the ALJ provided the following summary

of Dr. Green's findings:

> In November 2013, the claimant underwent another consultative psychological evaluation (Exhibit 11F). . . . Mental status examination showed him to exhibit a depressed mood with restricted affect. He admitted to experiencing suicidal ideation without plans or intent and experiencing perceptual distortions consisting of hearing the voice of his recently separated girlfriend and seeing her in the hallway. His speech was relevant, but delivered at a slow rate in normal volume and in a monotone. His thought processes were coherent, logical, and goal-directed and narrowed due to preoccupation with his worries and grief. He was able to recall three items after the first trial but none after a 20-minute delay. He also struggle [sic] with the performance of serial 7's. Based on these findings, the claimant was opined to have impaired capacity for new learning. WAIS-III testing yielded I.Q. scores of verbal 94, performance 81, and full scale 88 found to be consistent with low average intellectual functioning. He accurately solved elementary level problems and displayed the ability to retain and carryout two of the three instructions given, adequate fund of knowledge, and good quality conceptual responses to similarities. He also displayed intact persistence, adequate attention and concentration, good frustration tolerance, adequate work pace, and adequate social judgment. He was opined to suffer mild to moderate restrictions and limitations of functional psychological capacity for work and was assessed at retaining the ability to understand, remember, and carryout simple and detailed instructions and tasks.

(TR. 24). In comparing Plaintiff's litany of complaints and the ALJ's discussion, only

one discrepancy exists. Plaintiff argues that Dr. Green opined "impaired attention and

pace" while the ALJ stated that Mr. Roth displayed "adequate" attention and work

pace. While Plaintiff correctly cites Dr. Green's findings that Plaintiff suffered from "impaired attention and pace," the psychologist also defined Plaintiff's abilities in these areas as "adequate." *See* TR. 298. Thus, although Plaintiff's attention and pace may have been impaired, Dr. Green ultimately defined the abilities as "adequate," which the ALJ discussed. Accordingly, the Court should reject Plaintiff's argument that the ALJ turned a blind eye to Dr. Green's findings.

In a seeming afterthought, Plaintiff argues that the ALJ "only included a 10% reduction in production and pace," but argues that a 10% reduction "is insufficient because these CE's and treating physician Rouse all find that pace, concentration, memory, persistence, cognitive and learning disorder, not to mention his personality, depressive and anxiety disorders all combine to make the ability to work unlikely and worse that the ALJ's RFC allows." (ECF No. 16:21-22). Plaintiff argues that the ALJ had no basis on which to find a 10% reduction, but Plaintiff does not submit evidence from the medical record or case law in support of his claim that the reduction should have been more severe. Mr. Roth has the burden of proving his disability by furnishing medical and other evidence to the ALJ for use in drawing a conclusion about the effect of Plaintiff's impairments on his ability to work *See Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."). Mr. Roth has failed to meet his burden with regard to

his argument that the ALJ should have found more than 10% reduction in production. Accordingly, the Court should reject this allegation of error.

## IX.    NO ERROR IN THE IDENTIFICATION OF JOBS

As part of the RFC determination, the ALJ stated that Mr. Roth could perform jobs which involved "simple repetitive, routine instructions and work decisions" and were "structured, closely supervised and allow[ed] for little, if any independent judgment." (TR. 22). With this RFC, the ALJ concluded that Mr. Roth could perform the jobs of automobile detailer (DOT #915.687-034), janitor (DOT #381.687-018), and hospital cleaner (DOT #323.687-010). All of these jobs are "unskilled" and require "reasoning level 2." *See* DOT #915.687-034, DOT #381.687-018, and DOT #323.687-010; *see also* TR. 27. By definition, unskilled work requires "little or no judgment." 20 C.F.R. §§ 404.1568(a), 416.968(a). And "reasoning level 2" requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and] [d]eal with problems involving a few concrete variables in or from standardized situations." DOT, Appendix C, Components of the Definition Trailer. According to Mr. Roth, the ALJ's step five finding lacks substantial evidence because the RFC determination equated with "reasoning level 1" while the jobs the ALJ adopted required "reasoning level 2." (ECF No. 16:22). The Court should reject this argument.

In *Hackett v. Barnhart*, The Tenth Circuit Court of Appeals addressed a similar challenge regarding whether the RFC was consistent with the reasoning levels

required by the jobs relied on at step five. *Hackett v. Barnhart*, 395 F3d. 1168, 1176 (10th Cir. 2005). There, the Court noted that "level-two reasoning requires the worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and d]eal with problems involving a few concrete variables in or from standardized situations." *Id.* The plaintiff had an RFC which required him to perform only "simple and routine work tasks," which he argued was inconsistent with the jobs at step five, which required "reasoning level 3." *Id.* The Court agreed, stating that the RFC for "simple and routine work tasks" was consistent with level 2 reasoning. *Id.* *Hackett v. Barnhart* is controlling. Similar to the plaintiff in *Hackett*, the ALJ here found that Mr. Roth was capable of performing "simple, repetitive, routine instructions and work decisions." (TR. 22). Under *Hackett*, this RFC is consistent with "reasoning level 2" which is required by the jobs identified at step five. *See* DOT #915.687-034, DOT #381.687-018, and DOT #323.687-010. Thus, the Court should conclude that no error exists.

Plaintiff also argues that the ability to "deal with problems involving a few concrete variables in or from standardized situations" as required by "reasoning level 2" is incompatible with his ability to exercise "little, if any, independent judgment." (ECF No. 16:22). As support for this claim, Mr. Roth declares that "[d]ealing with problems is exercising independent judgment." (ECF No. 16:22). But Plaintiff provides no authority for this statement and indeed, the Court should conclude otherwise. All three jobs relied on at step five are classified as "unskilled." *See* TR. at

27; DOT #915.687-034, DOT #381.687-018, and DOT #323.687-010. As stated, "unskilled work" requires "little or no judgment." 20 C.F.R. §§ 404.1568(a), 416.968(a). Thus, the Court should conclude that the RFC which allowed for "little, if any, independent judgment" was consistent with the unskilled jobs at step five.

## X.    NO ERROR IN THE RFC

Mr. Roth alleges that: (1) the RFC failed to reflect specific limitations and (2) as a result, the hypothetical to the VE was flawed. (ECF No. 16:23-36). The Court should disagree.

### A.    ALJ's Duty in Assessing the RFC

In assessing the RFC, the ALJ is required to evaluate, consider, and address any opinion given by a State Agency physician. *See* 20 C.F.R. §§ 404.1527(c) & 416.927(c); SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). In assessing an individual's *mental* impairment, the ALJ must employ a "special technique" which involves rating the degree of functional limitation under four broad functional areas. 20 C.F.R. §§ 404.1520a(b)-(c) & 416.920a(b)-(c). This assessment is documented on a Psychiatric Review Technique (PRT) form and is used to rate the severity of the mental impairment at steps two and three of the sequential evaluation process. *See* SSR 96-8p, at *6-7.

Step four requires a more detailed assessment by itemizing various functions contained in the broad categories summarized on the PRT. *Id.* In assessing the RFC, the ALJ must consider the limitations and restrictions imposed by a claimant's severe

impairments and express any mental limitations in terms of specific, work-related mental activities he or she is able to perform. *Id.*, at \*6-7.

### B. No Reversible Error Regarding the RFC Assessment

At step four, the ALJ concluded that Mr. Roth had the RFC to:

> [W]ork at all exertional levels, with the following non-exertional functional restrictions and limitations: understand, remember, and carryout simple, repetitive, routine instructions; make only simple work related decisions; requires a job that is structured, closely supervised, and allows for little, if any, independent judgment; deal with only occasional change in work processes and environment; have only incidental, superficial work-related type contact with the general public, co-workers and supervisors, i.e., brief succinct, cursory, concise communication relevant to the tasks being performed; cannot perform any fast pace work; and may have up to a 10% reduction in production from that of the average employee.

(TR. 22).

Mr. Roth alleges that the RFC failed to account for limitations related to: (1) his "severe" impairments of learning disorder and personality disorder, (2) a finding from Dr. Massad that Plaintiff suffered from a "moderate" limitation in the area of concentration, persistence, and pace, and (3) anxiety attacks. (ECF No. 16: 23-36). The Court should disagree.

### 1. Severe Impairments at Step Two

At step two, the ALJ concluded that Plaintiff suffered from a "severe" learning disorder and personality disorder. (TR. 20). As a result, Plaintiff alleges that the ALJ erred by "fail[ing] to include their symptoms and limitation in the RFC." (ECF No. 16:31).

Once a claimant's impairments are deemed severe at step two, the ALJ must discuss their impact throughout the remainder of the disability determination. 20 C.F.R. §§ 404.1545(a)(2) & 416.945(a)(2). Indeed, in formulating the RFC, the ALJ must discuss the combined effect of all the claimant's medically determinable impairments, both severe and nonsevere. *See Wells v. Colvin,* 727 F.3d 1061, 1065 (10th Cir. 2013). However, the presence of an impairment, albeit severe, does not necessarily equate to corresponding limitations in the RFC. *Cavalier v. Colvin*, 2014 WL 7408430, at *2 (N.D. Okla. 2014). The RFC need only include such limitations as the medical record substantially supports. *See Kirkpatrick v. Colvin*, ___ F. App'x. ___, 2016 WL 5920745, at *3 (10th Cir. Oct. 11, 2016) ("Clearly, an ALJ doesn't commit error by omitting limitations not supported by the record"); *Arles v. Astrue*, 438 F. App'x. 735, 740 (10th Cir. 2011) (rejecting plaintiff's claim a limitation should have been included in his RFC because "such a limitation has no support in the record").

Plaintiff argues that the ALJ failed to account for Mr. Roth's "severe" learning disorder and personality disorder in the RFC. (ECF No. 16:31). But Mr. Roth fails to: (1) identify any specific work-related limitations stemming from the severe impairments or (2) point to any evidence in the record supporting his claim. Mr. Roth argues that the error was not harmless because all of the step five jobs required the worker to "[a]pply commonsense understanding to carry out *detailed* . . . written or oral instructions." (ECF No. 16:31) (emphasis in original). But Plaintiff fails to argue

how a "severe" impairment involving a learning disorder or personality disorder would impact the ability to perform the identified jobs. As a result, the Court should conclude that Plaintiff has failed to identify an error in the RFC. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987) (the claimant has the initial burden of establishing a disability in the first four steps of this analysis); *McAnally v. Astrue,* 241 F. App'x. 515, 518 (10th Cir. 2007) (affirming in part because "with regard to [her severe impairments], the claimant has shown no error by the ALJ because she does not identify any functional limitations that should have been included in the RFC assessment or discuss any evidence that would support the inclusion of any limitations" (citation and internal brackets omitted)); *Kirkpatrick v. Colvin,* ___ F. App'x. ___, 2016 WL 5920745, at *3 (10th Cir. 2016) (rejecting Plaintiff's argument regarding the alleged omission of certain limitations in an RFC because "[plaintiff] doesn't explain how these restrictions fail to account for his [limitations] . . . [a]nd it isn't our obligation to search the record and construct a party's arguments.")

## 2. Findings on the PRT Form

On the PRT form, Dr. Massad concluded that Plaintiff was "moderately" impaired in the area involving "difficulties in maintaining concentration, persistence, or pace." (TR. 430). According to Plaintiff, the RFC did not properly reflect these findings. (ECF No. 16:24-30). But these findings were opinions expressed on the PRT form, which is "not an RFC assessment, but [is] used to rate the severity of mental impairments) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, at *4.

Thus, the ALJ had no duty to express these particular findings in the RFC. *See Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) ("The ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment."); *see also Beasley v. Colvin*, 520 F. App'x. 748, 754 (10th Cir. 2013) (no error in the RFC's failure to reflect a "moderate" limitation finding from the PRT form).

Furthermore, in *Vigil*, the Tenth Circuit held that a claimant's moderate limitations with respect to concentration, persistence and pace were adequately addressed by an RFC limiting the claimant to unskilled work. *See Vigil v. Colvin*, 805 F.3d at 1204. Here too, the ALJ limited Plaintiff to jobs involving unskilled work. (TR. 27). *See supra*. This limitation is further proof that the ALJ adequately accounted for Dr. Massad's findings of a "moderate" impairment in the area of concentration, persistence, or pace, even though the ALJ was not required to specifically incorporate the PRT finding in the RFC.[4]

### 3. Anxiety

Mr. Roth alleges that the RFC for "simple work" failed to account for: (1) his anxiety, which was deemed "severe" at step two and (2) his anxiety attacks. (ECF No. 16:23-25, 33). According to Plaintiff, "the term simple work is a ridiculous

---

[4] Mr. Roth also twice states that "[s]imple work can also be ruled out by a VE on the basis of a serious impairment in concentration." (ECF No. 16:25-26). But no physician made findings that Mr. Roth suffered from a "serious" impairment in concentration.

application to RFC for persons suffering from anxiety attacks." (ECF No. 16:25). Mr. Roth's argument is not persuasive.

The entire medical record contains four references to anxiety. First, in the PRT, Dr. Massad assessed Plaintiff for anxiety-related disorders, but the psychologist found that none of the criteria for an anxiety-related order existed. (TR. 266). Second, in his summary of the medical evidence, Dr. Massad noted Plaintiff's mood "appeared anxious . . ." and that Plaintiff "has been having problems driving due to anxiety." (TR. 273). Third, during a consultative examination, Dr. Rouse noted that Plaintiff suffered from anxiety, not otherwise specified. (TR. 285-286). And finally, following a consultative examination, Dr. Green diagnosed Plaintiff with generalized anxiety disorder. (TR. 299).

Thus, the entire sum of the evidence related to anxiety consists of two diagnoses of anxiety, the absence of findings regarding any particular anxiety-related disorder, and a notation that anxiety caused Plaintiff difficulty in driving. Contrary to Plaintiff's implication that he suffers from anxiety attacks, there is no evidence in the record to support this claim.

Regarding the diagnoses of anxiety, the ALJ agreed and concluded that Plaintiff suffered from "severe" generalized anxiety disorder. (TR. 20). However, "[t]he mere diagnosis of a condition does not establish its severity or any resulting work limitations." *Paulsen v. Colvin*, ___ F. App'x. ___, 2016 WL 6440368 at *4 (10th Cir. 2016). And the absence of findings regarding a particular anxiety-related

disorder certainly does not weigh in Plaintiff's favor. Finally, regarding anxiety during driving, Plaintiff testified that he got lost sometimes when he drove, "enough to kind of spook [him.]" (TR. 47). But Mr. Roth does not argue that sporadic anxiety while driving would impact his ability to work and no medical professional has rendered any such opinion. Thus, the Court should conclude the ALJ did not err in failing to specifically account for anxiety or anxiety attacks in the RFC.

### 4. No Error in the Hypothetical to the VE

Plaintiff also contends that the hypothetical to the VE was deficient because it failed to include the limitations which Plaintiff believes were improperly withheld.[5] The Court should reject this argument, because it is premised on a finding that the RFC was faulty, which is not the case. In *Qualls v. Apfel*, 206 F.3d 1368 (10th Cir. 2000), the Tenth Circuit Court of Appeals rejected a similar argument, stating:

> Finally, plaintiff contends that the ALJ's hypothetical questions to the VE did not recite all of plaintiff's impairments and, therefore, the VE's answers to those questions could not serve as substantial evidence to support the ALJ's conclusion that plaintiff is not disabled. We have already rejected plaintiff's challenges to the ALJ's RFC assessment. The ALJ propounded a hypothetical question to the VE that included all the

---

[5] In a cursory argument, Plaintiff states:

> The Commissioner does not . . . explain why the hypothetical failed to include restrictions on, for example, the ability to understand instructions or respond to work pressures. As a consequence, the vocational expert did not address these limitations when he suggested vocations such as punch-board assembler, laundry worker, or sorter.

(ECF No. 16:27). The Court need not address this argument, however, as it appears misplaced. The hypothetical *did* account for Plaintiff's ability to understand instructions, there was no limitation relating to work pressures, and the VE did not rely on the listed jobs.

> limitations the ALJ ultimately included in his RFC assessment.
> Therefore, the VE's answer to that question provided a proper basis for
> the ALJ's disability decision.

*Qualls v. Apfel*, 206 F.3d at 1373. As in *Qualls*, the Court should reject Mr. Roth's

allegation that the hypothetical question to the VE was faulty based on a failure to

include certain limitations in the RFC which the ALJ properly omitted.

## XI.    NO ERROR IN THE CREDIBILITY ANALYSIS

Finally, Mr. Roth challenges the credibility analysis alleging: (1) the ALJ failed

to link his credibility findings to specific evidence and (2) the reasons the ALJ

provided to discount Plaintiff's credibility lacked evidentiary support. Neither

argument has merit.

### A.    The Administrative Law Judge's Duty in Assessing Credibility

As part of the disability determination, the ALJ had to consider the evidence

and decide whether he believed Mr. Roth's subjective complaints. *See* SSR 96-7p, at

*1-2 (July 2, 1996). In doing so, the ALJ had a duty to make specific findings and

link them to substantial evidence. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.

1995) (noting the duty to "closely and affirmatively link[ ]" credibility findings to

substantial evidence); SSR 96-7p, at *4 (July 2, 1996) (noting the duty to provide

"specific reasons for the weight given to the individual's statements" "articulated in

the determination or decision" in a manner "sufficiently specific to make clear to the

individual and to any subsequent reviewers the weight" given "to the individual's

statements and the reasons for that weight").

Besides objective evidence, the ALJ may consider certain factors in evaluating a claimant's credibility, including the claimant's daily activities; the location, duration, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; any treatment other than medications the individual receives or has received for pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* SSR 96-7p, at *3; *Keyes-Zachary*, 695 F.3d 1156, 1167 (10th Cir. 2012). However, "an ALJ is not required to address each factor in his decision." *Duncan v. Colvin*, 608 F. Appx. 566, 578 (10th Cir. 2015).

### B.    No Error in the Credibility Analysis

In assessing Mr. Roth's credibility, the ALJ outlined the proper procedure, summarized Plaintiff's testimony, and summarized the medical evidence, including records from Plaintiff's treating psychologist, two consultative examining psychologists, and disability and function reports submitted by Mr. Roth. (TR. 22-25).

The ALJ did not completely discount Plaintiff's claims of mental impairments, rather he found that the evidence was "inconsistent with the claimant's subjective complaints of *totally* disabling medical impairments." (TR. 25). (emphasis added).

Citing four reasons, the ALJ ultimately found that the Plaintiff was "not *fully* credible" (TR. 25) (emphasis added).

First, Plaintiff claimed that his impairments were totally disabling, relying on evidence from treating psychologist Dr. Rouse, who opined that Plaintiff suffered from "marked" difficulties with persistence, pace, memory, and concentration. (TR. 286). But the ALJ concluded that Mr. Roth suffered from no more than "moderate" limitations in these areas, relying on findings from consultative examiner Dr. Green, who opined that Mr. Roth suffered from moderate impairments in the abilities to:

- understand, remember, and carry out complex instructions,

- make judgments on complex work-related decisions,

- interact appropriately with the public, supervisors, and co-workers, and

- respond to usual work situations and to changes in a routine work setting.

(TR. 25, 293-294). The ALJ also adopted Dr. Green's findings because they had been based on formal testing results. (TR. 25).

Plaintiff must demonstrate the error in the ALJ's credibility rationale or finding. The mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination. The Tenth Circuit Court of Appeals has stated:

> The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the

> court would justifiably have made a different choice had the matter been before it de novo.

*Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007) (citations, quotations, and brackets omitted). Therefore, where the ALJ has reached a reasonable conclusion that is supported by substantial evidence in the record, the court will not reweigh the evidence and reject that conclusion even if it might have reached a contrary conclusion in the first instance. Here, it seems as though Plaintiff is wanting the court to reweigh the evidence that the ALJ relied on in discounting Plaintiff's credibility. Mr. Roth states that the ALJ "couldn't have based his opinion on the MER because his opinion isn't supported by the evidence." (ECF No. 16:37) (internal quotation marks omitted). The Court should disagree. The ALJ's summary of the evidence is reasonable and supported by the record and the ALJ gave valid reasons for adopting Dr. Green's opinion over the opinion from Dr. Rouse when discounting Plaintiff's credibility.

Second, the ALJ relied on an apparent inconsistency regarding Plaintiff's use of medication to treat his mental impairments. (TR. 24). Plaintiff's treating psychologist opined that Plaintiff should continue his medications and contact his prescribing physician for any changes in medications. (TR. 287-291, 302-312). The ALJ noted this fact, but then cited evidence from three reports submitted by Plaintiff which stated that he was not taking any medications. (TR. 24, 215, 242, 248). Ultimately, the ALJ relied on the inconsistency as a basis to discount Plaintiff's credibility, stating:

> It appears that the claimant persistently reported to his treating psychologists that his symptoms were of such severity and intensity as to require long-term prescription for psychotropic medications and that he had persistently taken the psychotropic medications as prescribed. In contrast, throughout his prehearing and post-hearing reports, the claimant has persistently reported that he has not taken any medications. Thus it appears that treating psychologists' assessments/opinions of the claimant suffering totally disabling psychiatric medical impairments were not based on full disclosure and totally honest reports from the claimant of the severity and intensity of his symptoms.

(TR. 24).

Third, the ALJ cited a lack of hospitalizations or admission to crisis treatment centers in support of discounting Plaintiff's claims that his impairments were totally disabling. (TR. 25). The rationale was properly cited in support of the credibility determination, as the ALJ was explaining why he believed Mr. Roth was not as severely impaired as he claimed. *See* SSR 96-7p at *3 (ALJ may consider any treatment the individual has received for his symptoms); *Sherman v. Barnhart*, 192 F. App'x. 801, 804 (10th Cir. 2006) (ALJ properly relied on a lack of hospitalization for plaintiff's impairments in discounting her credibility).

Fourth, the ALJ relied on Plaintiff's daily activities as a factor for discounting Plaintiff's claims of total disability, citing evidence that Mr. Roth reported being able to live independently, drive, shop, perform household chores, handle funds and bank accounts, and use community resources. (TR. 25). The ALJ's reliance on Mr. Roth's daily activities was proper. *See* SSR 96-7p at *3; *Keyes-Zachary v. Astrue*, 695 F.3d

1156, 1168 (10th Cir. 2012) (ALJ properly relied on plaintiff's activities of daily living as one factor to discount her credibility).

Additionally, and as part of the credibility discussion, the ALJ stated "[i]f the claimant suffers symptoms of marked severity and intensity as reported and has not been taking any psychotropic medications, one would expect him to experience frequent and/or prolonged episodes of acute exacerbation." (TR. 24). According to Plaintiff, this was an impermissible statement by the ALJ substituting his own medical opinion for that of a physician—effectively "playing doctor." (ECF No. 16:38-40). The Plaintiff is correct, as the statement was an improper lay judgment by the ALJ, without supporting evidence. *See Winfrey v. Chater,* 92 F.3d 1017, 1022 (10th Cir. 1996) (the ALJ improperly substituted his medical judgment for that of the physician when he determined that the test results were not adequate to support a diagnosis). Although *this* rationale is insufficient to discount Plaintiff's credibility, the ALJ's remaining reasons are valid and the Court should conclude that the ALJ followed the correct legal standards in evaluating Mr. Roth's credibility and that the reasons supplied were supported by substantial evidence.

## XII. RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner should be **AFFIRMED**.

**XIII. NOTICE OF RIGHT TO OBJECT**

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **January 25, 2017**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

**STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED on January 11, 2017.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE